UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

NATHANIEL D. SMITH,
     Plaintiff,

V.

BI-STATE COMPACT
COMMISSION, ILLINOIS/
MICHIGAN, INTERSTATE
COMMISSION ON ADULT
OFFENDERS SUPERVISION,
               et al.
     DEFENDANT(S).

Case: 2:15-cv-14026
Judge: Murphy, Stephen J.
MJ: Patti, Anthony P.
Filed: 11-10-2015 At 11:32 AM
PRIS SMITH v. BI-STATE COMPLACT COM
MISSION ET AL. (SO)

COMPLAINT PURSUANT TO
28 U.S.C. §§ 1361, 2241
AND 42 U.S.C. §§ 1983,
1985(3), 1986.

There are no other pending or resolved civil actions between these parties arising out of the Same transaction or occurrence as alleged in this Complaint.

VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

I. INTRODUCTION

1. This Complaint alleges that Nathaniel Demetrius Smith (hereafter Plaintiff), A PAROLEE who Curently

Was paroled to Reside in/at the Detroit Reentry Center 17600 Ryan Rd. Detroit, michigan. 48212; as an order of parole to take and complete the Violence Prevention Program (VPP), had and continues to have his civil rights declared under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution violated, impeeded, or interfered with by the actions or inactions of the below-named individuals or persons. Plaintiff asserts instances of character defamation, Unreasonable Search and Seizure, false arrest/imprisonment, double Jeopardy, Substantive and procedural due process violations, denial of witness Confrontation, and in a Continuous manner, and Seeks remedies against the following, including declaratory and injunctive relief and redress of damages, as well as immediate release from illegal detention/confinement.

2.) Plaintiff's mixed petition is pursuant to 42 U.S.C.A. §§ 1983, 1985 (3), 1986 and 28 U.S.C.A. §§ 2241 (c)(3); 1361.

## II. Jurisdiction

3.) This Court has personal Jurisdiction pursuant to 28 U.S.C.A. §§ 1331, 2201, 1391(e); Supplemental Jurisdiction is Conferred under 28 U.S.C.A. § 1367(c)(3) and/or diversity Jurisdiction under 28 U.S.C.A. § 1332 (a)(1); also see 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 2000h-2.

## III. Parties

4.) This complaint is against both state and local municipality officers in either their official or Personal capacities or both. It Concerns matters encompassing the Interstate Compact (4 U.S.C.A. § 112) and its party members under the Color of State law. See 42 U.S.C.A. §§ 4701 et. seq.; 4727.

[ Interstate Compact Commission Appointee(s)/Member(s) ]

5.) "unknown Hagerman, in his official and personal Capacity: Interstate Commission on adult offender Supervision Director. manages day to day

activities of the Interstate Compact Commission (ICC) staff; serves as secretary, hires and supervises these staff; coordinates training education regarding regulations of interstate movement of offenders. Involvement from  / /  to  / / .

6. Sam Razor, in his official and personal capacity; Interstate Commission on Adult Offender Supervision Deputy Director. Monitors and implements policy and rules governing interested parties regarding interstate movement of offender and initiates actions to address and correct non-compliances. Involvement from  / /  to  / / .

## [ICAOS Party Member(s)]

7. Illinois Interstate Commission on Adult Offender Supervision, in its municipal or local governmental or official and personal capacity. Bi-state or joint agency promoting public safety and rights of victims through the control and regulation of interstate movement of offenders in the community and providing rehabilitation for those offenders. Involvement from 08/14/05 - 12/20/10.

8. Michigan Interstate Commission on Adult Offender Supervision; in its municipal or local governmental or official and personal capacity. Bi-state or joint agency promoting public safety and rights of victims through the control and regulation of interstate movement of offenders in the community and promoting rehabilitation for those offenders. Involvement from 08/14/05 - 12/20/10.

## [ICAOS, ICC Member(s), Employee(s)]

9. Michelle Buscher, in her official and personal capacity. Compact Administrator for Illinois ICC; supervisory officer/agent. Monitors

parole revocation matters, ensures due process requirements are timely and adequately met, and ensures ICAOS rules, policies, and procedural system regarding parole supervision, retaking, extradition, warrant issuance and execution is efficiently and effectively maintained. Handled case load from 08/14/05 - 12/20/10.

10. John Doe #1, In their official and personal capacity. Illinois parole office; ICAOS employee/agent/officer. Handled parole supervision and parole revocation investigatory or hybrid function from 08/14/05 - 11/28/06.

11. Amanda Saylor, in her official and personal capacity. Illinois parole officer; ICAOS employee/agent/officer. Handled parole supervision from 05/27/09 - 12/20/10.

12. Charles Victor, in his official and personal capacity. Illinois parole officer; ICAOS employee/agent/officer. Handled parole supervision and parole revocation investigatory or hybrid function from 10/04/09 - 04/06/10.

13. "Unknown" Faulkner, in his official and personal capacity. Illinois parole agent; pro tem Supervisory Agent. Handled preliminary parole revocation proceedings during dates 02/19/10 - 02/24/10.

14. "Unknown" Julian, in his official and personal capacity. Illinois parole agent/official; pro tem supervising agent, investigatory function. Handled preliminary parole revocation proceedings during dates 02/19/10 - 02/24/10.

15. Bill Clark, in his official and personal capacity. Illinois parole agent/official; hearings officer/examiner, adjudicatory function. Handled preliminary parole revocation proceedings during date of 02/24/10.

16. Pat Cole, in their official and personal capacity. Compact Administrator;

parole service section manager for Michigan ICC; supervising agent/officer. Monitors parole revocation matters, ensures due process requirements are timely and adequately met, and ensures ICAOS rules, policies and procedural system regarding parole supervision, retaking, extradition, warrant issuance and execution is efficiently and effectively maintained. Handled case load from 08/14/05 - 01/29/07.

17. Donald Matson, in his official and personal capacity. Compact administrator for Michigan ICC; supervising agent/officer. Monitors parole revocation matters, ensures due process requirements are timely and adequately met, and ensures ICAOS rules, policies and procedural system regarding parole supervision, retaking, extradition, warrant issuance and execution, special parole conditions notification is efficiently and effectively maintained. Manages out-of-state parole supervision protocol. Handled case load from 11/25/08 - 12/20/10.

18. Daryn Cobb, in his official and personal capacity. Michigan parole agent/official; ICAOS employee/agent/officer. Hybrid function in preliminary parole revocation/parole order amendment matters from 04/06/10 - 04/14/10.


[Michigan Corrections and Parole Authorities]

19. Daniel Heyns, in his official and personal capacity. Governor appointee departmental deputy and Director of Michigan Department of Corrections; supervises and controls the affairs of the Bureau of Field Services, Bureau of Parole and Probation Services. Promulgates rules guiding the parole board and parole processes and enters into interstate corrections compact agreements authorizing prisoner transfer. Assumed predecessor, Patricia Caruso; tenured from  /  / - current.

20. John Rubitschun, in his official and personal capacity. Michigan Fields Operations Administrator; Deputy Director Bureau of Field Services; directs and supervises affairs of the Office of Field Programs. Monitors and ensures OFP rules, policies, and procedural system regarding retaking, extradition, warrant issuance is efficiently and effectively executed; responsible for general parolee supervision, employs/hires parole officers and officials, and formulates investigatory and supervisory methods for parole staff. Involvement from 08/14/05 - 01/24/11.

21. Thomas Combs, in his official and personal capacity. Michigan Parole Board Chairman; executive member; Operations Administrator for the parole board, its duties and function. Policy maker and special panel member. Responsible for the appointment and supervision of parole board members. Assumed predecessor, John Rubitschun; tenured from  / /  - current.

22. Barbara Sampson, in her official and personal capacity. Michigan senior parole board member; Adjudicator and Ad hoc investigator. Handled case load 04/13/11 and 09/07/12.

23. Miguel Berrios, in his official and personal capacity. Michigan parole member; Adjudicator. Handled case load 11/06/09 and 04/15/10.

24. Paul Condino, in his official and personal capacity. Michigan parole member; Adjudicator. Handled case load 11/06/09.

25. Robert  Aguirre, in his official and personal capacity. Michigan parole board member; Adjudicator. Handled case load 04/15/10.

26. Anthony King, in his official and personal capacity. Michigan parole board member; Adjudicator. Handled case load 04/13/11.

27. Jane Price, in her official and personal capacity. Michigan parole board member; Adjudicator. Handled case load 08/22/11 and 08/22/13.

28. Stephen Deboer, in his official and personal capacity. Michigan parole board member; Adjudicator. Handled case load 08/22/11.

29. Amy Bonito, in her official and personal capacity. Michigan parole board member; Adjudicator. Handled case load 08/22/13.

30. Rachel Johnson-Waterbury, in her official and personal capacity. Michigan parole board panel member; designee hearings officer/examiner; pro tem Adjudicator. Handled case load 03/08/11.

31. Monica Laws-Wright, in her official and personal capacity. Michigan parole official; parole revocation hearings attorney law examiner; pro tem prosecutor. Handled case load 03/08/11.

32. Don Martin, in his official and personal capacity. Michigan parole official; supervising agent. Monitors parole revocation matters and ensures due process requirements are timely and adequately met, ensures departmental policies and operating procedures are enforced and followed. Handled case load from 11/28/06 - 01/29/07.

33. Sonia Warchock, in her official and personal capacity. Michigan Parole Supervision Unit Area Manager. Maintains communication with field operations administrator to notify and update parole processes, and supervises regional staff to ensure departmental policies and operating procedures are enforced and followed. Handled case load 01/27/09.

34. Charles Sinclair, in his official and personal capacity. Michigan Parole Supervision Unit Area Manager. Maintains communication with field operations administrator to notify and update parole processes, and supervises regional staff to ensure departmental policies and operating procedures are enforced and followed. Handled case load 01/21/10.

35. Ira Coreen, III, in her official and personal capacity. Michigan parole official; supervisory agent. Monitors parole revocation procedures and

ensures due process requirements have been timely and adequately met. Assumptively handled case load 01/27/09.

36. Frank Messer, in his official and personal capacity. Michigan parole official; supervisory agent. Monitors parole revocation procedures and ensure due process requirements have been timely and adequately met. Assumptively handled case load 04/06/10.

37. Laraine Vanlopik, in her official and personal capacity. Michigan parole official; supervising agent. Monitors parole revocation procedures and ensures due process requirements have been timely and adequately met. Assumptively handled case load 01/27/09.

38. Kelly Hanson, in his official and personal capacity. Michigan parole agent/officer. Assumptively handled parole revocation investigatory function during date of 01/27/09.

39. Susan Rondeau, in her official and personal capacity. Michigan parole agent/officer. Assumptively handled parole revocation investigatory function during dates of 01/27/09 and 06/24/09.

40. Lydia Hines, in her official and personal capacity. Michigan parole agent/officer; designated fee collection staff. Ensures distribution of financial review and report statement and determines outstanding delinquencies, willful non payments, and collects payments. Handled case load 10/30/09.

41. James Cole, in his official and personal capacity. Michigan parole agent/officer; hybrid function in preliminary parole revocation proceedings. Handled case load 01/21/10, 01/05/11, and 01/26/11.

42. John Doe #2, in their official and personal capacity. Michigan parole agent/officer; central office staff or CFA personnel assistant. Commences/forwards/processes parole process information from parole

authorities to FOA. Handled case load 04/15/10.

43. Jason Forrester, in his official and personal capacity. Michigan parole agent/officer. Assumptively handled parole revocation investigatory function during dates of 01/14/11 and 01/21/11.

44. Charels Motton, in her official and personal capacity. Michigan parole official; investigatory function; investigating officer. Handled preliminary parole revocation proceedings during date of 01/05/11.

45. Marvin Bruin, in his official and personal capacity. Michigan parole official; adjudicatory function; hearings officer/examiner. Handled preliminary parole revocation proceeding during date of 01/05/11.

46. Nancy Wasso, in her official and personal capacity. Michigan parole official; adjudicatory function; hearings officer/examiner. Handled preliminary parole revocation proceeding during date of)1/26/11.

## IV.   EXHAUSTION OF CLAIMS

47. Plaintiff has exhausted his Administrative Remedies pursuant to 42 U.S.C.A. § 1997(e)(A).

48. On or about   / / , Plaintiff sought relief by habeas corpus related to administrative due process violations against Illinois Interstate Commission on Adult Offenders Supervision Authorities, mentioned herewith and those unknown. (See _10 - C - 2003_____).

49. The _U. S._ District Court, dismissed that action without prejudice on   / / . Plaintiff had been relocated to the state of Michigan via retaking procedures under the compact.

50. On or about   / / , Plaintiff sought mandamus action against members of the ICAOS in Michigan and Michigan Parole Board, mentioned here with this complaint. (See_____30th Judicial Circuit, Ingham County;

Court No. 13-782-Aw.

51. That court denied  remedy on 10/23/13. Plaintiff sought reconsideration on 11/23/13 and was again denied on *12/3//3.*

52. Plaintiff mentioned several parties in his administrative complaints (prison grievance) as they were individuals known to him at that time. After discovery, in response forwarded to the court as exhibits, Plaintiff became aware of the parties now mentioned herewith this complaint. Plaintiff sought amendment to include additional parties but was estopped.

53. Before discovery Plaintiff could not have known the existence of those parties nor could those parties names nor occupational status be included or mentioned within those previous actions.

## V.  FACTUAL STATEMENT

54. Plaintiff-Petitioner (heretofore: Plaintiff) was convicted of Uttering and Publishing, MCLA § 750.249, 02/26/04; sentenced to 23 months to 14 years in the 5th Judicial Circuit Court, Michigan.

55. Plaintiff paroled to Illinois under the Interstate Compact on Adult Supervision (ICAOS) [and hereby interchangeable with the Interstate Commission of the ICAOS] on 08/14/05. That parole consisted of 18 months set to expire on 02/14/07.

56. On 03/03/06, unknown Illinois agent John Doe #1 alleged Plaintiff failed to report which resulted in an issuance of a parole absconding warrant.

57. On 05/01/06, Plaintiff was arrested on Controlled Substance Charges. He was held in the Cook County Jail due to a parole hold.

58. That charge(s) was dismissed on 06/01/06; Plaintiff became available to Michigan Department of Corrections (MDOC) for retaking.

59. On 06/21/06, Plaintiff was served notice of parole violation charges which included:

    (1) Violation of any Criminal Statute(s) (date unknown).

    (2) Failure to report (03/03/06).

    (3) Failure to Permit Agent to visit (date unknown).

    (4) Failure to Report Police Contact (date unknown).

    (5) Leaving the State of Illinois w/o permission (date unknown).

    (6) Changing Residence w/o Permission (date unknown)

60. On or about 07/13/06, preliminary parole revocation or probable cause hearing was held, and no probable cause for parole violation was found; extradition hearing was also held.

61. Plaintiff was released from jail that same day: Illinois Compact Administrator Michelle Buscher was informed that he was being discharged from parole status. He was also available for retaking.

62. On 11/28/06, Plaintiff was arrested on Malicious Destruction of Property in Van Buren County, Michigan; He was held on a parole hold.

63. During his confinement parole supervising agent Don Martin demanded a urinalysis that Plaintiff refused providing that he was not required to do so and that he had been discharged from parole in Illinois.

64. on 12/04/06, Plaintiff was involved in a disturbance within the jail with another pre-trial detainee.

65. On 12/08/06, Plaintiff was served notice of parole revocation charges which included:

    (1) - (6) previous charges brought forth in Illinois.

    (7) Failure to Report (07/13/06).

    (8) Leaving the State of Illinois w/o permission (11/28/06).

    (9) Refusal to submit to drug testing (11/28/06).

(10) Engaging in Assaultive, Abusive, Threatening and Intimidating behavior (12/04/06).

(11) Assault & Battery (12/04/06).

66. On 12/15/06, Plaintiff pled guilty to the MDOP. He was sentenced to 27 days in jail w/ 3 days credited.

67. On 01/29/07, parole revocation hearing was held, parole board members Miguel Berrios and James Atterberry presiding. He was found not guilty on counts 1 - 8 and guilty on counts 9 - 11; he was then returned to the custody of the MDOC.

68. Plaintiff was reparoled on 11/25/08 to Illinois custody; that parole consisted of 12-months set to expire on 11/25/09.

69. On 12/14/08, Michigan Compact Officer Susan Rondeau prepared an apprehended absconder supplemental parole violation report pertaining to alleged violations occurring on 12/02/08.

70. On 12/15/08, Field Operations Administrator, Deputy Director John Rubitschun issued a parole warrant.

71. Plaintiff was apprehended by Absconder Recovery Unit on 01/27/09. He was arrested and held in Berrien County, Michigan. He was allegedly given notice during that detainer.

72. At an unknown date parole agent Kelly Hanson prepared a parole violation report where Plaintiff was alleged to have violated the following conditions:

(1) Failure to make regularly scheduled report (12/02/08).

(2) Possession of Controlled Substance, Marijuana (12/02/08).

(3) Possession of Controlled Substance, Opiates (12/02/08).

(4) Possession of Controlled Substance, Cocaine (12/02/08).

(5) Address change w/o permission (11/25/08).

(6) Failure to comply w/ curfew (11/25/08).

Supervising agent Ira Coreen, III, confirmed notice and review.

73. Compact officer Rondeau, agent Hanson, supervising agent Laraine Vanlopik, and are manager Sonia Warchock recommended parole reinstatement with additional programming.

74. At an unknown date Plaintiff was enrolled in LCRRP and Residential Re-Entry Programming or Alternative Incarceration which was completed on 05/11/09.

75. On 05/27/09, Illinois agent Amanda Saylor prepared an ICAOS Notice of Arrival providing Plaintiff E.T.A. on 05/15/09. C/A Buscher reviewed and approved notice.

76 On 06/13/09, Plaintiff was arrested and held in Van Buren County, Michigan by request of Agent Vanlopik.

77. On 06/24/09, C/O Rondeau allegedly served Plaintiff notice of a parole violation charge which included:

(1) Leaving the State of Illinois w/o permission (06/13/09).

78. Plaintiff was immediately released from that detention and ordered to return to Illinois; He was enrolled in Day Reporting Program by parole agent Christopher Winfrey.

79. On 09/01/09, agent Winfrey prepared and forwarded to Michigan an ICAOS progress report providing that Plaintiff had "limited employment opportunity" but participated in substance abuse treatment classes weekly and submitted to random urinalysis reports daily.

80 On 10/04/09, parole agent Charles Victor assumed Plaintiff's caseload.

81. On 10/08/09, agent Victor filed an Offender Violation (OV) Report concerning matters alleging  Plaintiff tested positive for drugs on 07/18/09 and 09/30/09 and numerous allegations of failure to report.

Agent Victor noted that Plaintiff "discharged unsuccessfully" from the day reporting program. C/A Buscher reviewed and authorized that report.

82. On 10/30/09, Compact officer Lydia Hines initiated a parole action request for parole extension. That request noted Plaintiff's parole discharge for 01/21/10. Recommendation and rationale for extension included:

    1. Arrest occurring on or about 08/02/09 for possession of a controlled substance and knowingly damage of property and criminal trespass;

    2. and to allow for payment of an outstanding crime victim assessment fee and state reimbursement cost.

83. On 11/03/09, order for parole extension was entered. Parole Board members Berrios and Paul Condino authorized that order on 11/06/09. That extension was set to expire on 07/21/10.

84. On 11/06/09, Michigan Compact Administrator Don Matson responded to the OV report (10/08/09) by requesting additional information on the 08/02/09 arresting charges.

85. On 11/12/09, Compact Officer Hines initiated an ICAOS Compact Action Request, approved by C/A Matson, to extend Plaintiff parole, and to conduct a probable cause hearing regarding the arrest. C/A Buscher acknowledged correspondence.

86. On 11/13/09, C/A Matson designated Plaintiff a Registered Sex Offender.

87. On 11/23/09, agent Victor responded to the CA request (11/12/09) providing Harvey Police Department in Illinois never contacted parole authorities nor did Plaintiff report arrest. Arrest report was obtained and forwarded; those charges were dismissed.

88. Agent Victor filed an OV report concerning matters alleging Plaintiff refusal of drug treatment programming. On 10/27/09, positive drug

testing, and non-efective/unmanageable supervision. C/A Buscher reviewed and authorized that report.

89. On 12/01/09, C/A Matson responded to the OV report (11/23/09) suggesting continued supervision, appropriate sanctions, and to notify Plaintiff of special condition imposition to attend treatment  Notice was to be returned signed by Plaintiff.

90. On 01/29/10, Agent Victor filed an OV report concerning matters alleging Plaintiff absence from appointments scheduled 11/15/09 and 11/16/09, and an incident occurring on 01/13/10 where allegations of threatening behavior and drug use occurred. C/A Buscher reviewed and authorized that report.

91. Plaintiff was last seen in person on 12/01/09. Due to the location of the incident alleged (Michigan) a case closure notice was also filed with that OV report. That report noted Plaintiff supervision termination date of 11/25/10.

92. On 02/09/10, Deputy Director Rubitschun issued a parole warrant for matters concerning the 01/13/10 incident.

93. That same date C/A Matson responded to that OV report 01/29/10 acknowledging the violations and informing that a warrant had been executed. That report would again identify Plaintiff as a Registered Sex Offender.

94. Plaintiff absconder status was outstanding and kept active by C/A Matson on 02/11/10; C/A Buscher corresponded with Plaintiff via telephone that he was being discharged from parole status in this proximity of this period or month

95. On 02/15/10, Plaintiff was arrested by HPD on several charges including driving while license suspended, no license plate (on front of vehicle),

no insurance, and possession of controlled substances. He was held in the Cook County Jail due to a parole hold.

96. Compact Officer Saundes Brown cancelled that absconder warrant that same day.

97. On 02/19/10, field agent "Unknown" Julian served Plaintiff with notice of parole violation charges which included:

  (1) No license plate (02/15/10)

  (2) No insurance (02/15/10)

  (3) Possession of Controlled Substance (02/15/10)

  (4) Absconding (01/13/10)

  (5) Driving while license suspended (02/15/10)

  (6) Michigan state parole warrant (01/13/10)

98. On 02/24/10, preliminary parole revocation or probable cause hearing was held. Investigating agent "Unknown" Faulkner presented facts from a report prepared by agent Victor. Hearing examiner Bill Clark found no probable cause on counts 1 - 3 and 5 and probable cause on counts 4 and 6.

99. Those charges brought forth on 02/15/10 were dismissed on 03/19/10; C/A Matson reissued an absconder warrant. Plaintiff was extradited back to Michigan and returned to the custody of the MDOC. He was allegedly given notice during that confinement.

100. On 04/06/10, parole agent Jason Golightly prepared a parole violation report where Plaintiff was alleged to have violated the following condition:

  (1) Failure to make regular scheduled report to field agent or to make a subsequent report (date unknown).

Supervising agent Frank Messer confirmed notice and review; Plaintiff was

(16

informed that he was "not eligible for a probable cause hearing."

101. On or about 04/12/10 - 04/14/10, Compact Officer Daryn Cobb and C/A Matson recommended a six month parole extension and additional Special Alternative Incarceration programming; C/A Matson noted no criminal behavior had been found.

102. On 04/15/10 (@ 7:50:48), John Doe #2 initiated a parole action request for parole extension. That request noted Plaintiff's parole discharge for 01/21/11

103. On that same day (@ 7:50:28), order for parole extension was entered; parole board members Charles Brown and Robert Aguirre authorized that order. That extension was set to expire on 01/21/11 that was manually altered to appear as 11/21/11.

104. On 04/28/10, Plaintiff was enrolled in Intensive Detention Rehabilitative Program (IDRP) or SAI which was completed on 06/16/10. He would return to a Michigan residence.

105. On 04/29/10, Plaintiff submitted request for transfer. Request was entered by Michigan parole authorities on 05/14/10.

106 On 06/27/10, Illinois parole authorities approved transfer and imposed additional condition - electronic monitoring.

107 Plaintiff's departure was verified on 06/29/10. He did not have any direct contact with any parole official until 11/23/10.

108. On 12/06/10, C/A Matson initiated a CA request due to a complaint originating from Benton Harbor, Michigan suggesting to conduct a probable cause hearing.

109. On 12/07/10, parole agent Grace Jefferson responded to the CA report dated (12/06/10) giving notice of a case closure due to the location of the incident alleged (in Michigan).

110. C/A Matson responded to that notice (12/07/10) suggesting continued supervision, appropriate sanctions, to notify Plaintiff of special condition imposition to refrain from communication/contact with Melinda Elis, and informing that a warrant would be sought for a misdemeanor offense. Notice was to be returned signed by Plaintiff.

111. On 12/15/10, C/A Matson initiated a CA request suggesting the reopening and continued supervision (to observe return) of Plaintiff caseload/person.

112. Plaintiff was arrested by Kalamazoo Public Safety Department for Interfering w/ a safety officer on 12/20/10. He was given a personal recognizance bond, then released to custody of Berrien County Sheriff Department, in Michigan. There he was charged for the 01/13/10 incidents and driving while license revoked on 12/15/09 and 12/02/10.

113. On 12/28/10, parole agent Angela Biggart allegedly gave Plaintiff notice of parole violation charges which included:

   (1) Involvement in assaultive behavior (12/03/10).

   (2) Engaged in assaultive, abusive, threatening and/or intimidating behavior (12/03/10).

   (3) Involvement in destructive behavior (12/02/10).

   (4) Involvement in behavior damaging property (12/02/10).

   (5) Leaving the state of Illinois w/o permission (12/02/10).

   (6) Involvement in behavior which violated an ordinance (12/20/10.

   (7) Engaged in behavior that was assaultive, abusive, threatening and/or intimidating by destroying property (12/02/10).

114. On 01/03/11, Plaintiff was involved in another disturbance within the jail with another pretrial detainee.

115. On 01/05/11, preliminary parole revocation or probable cause hearing was

(18

held; parole agent James Cole and supervisory agent Marvin Brown presented facts from agent Cole's report. Hearing examiner Charles Motton found no probable cause on counts 1 - 4 and 7, and probable cause on counts 5 and 6.

116. On 01/06/11, those charges were brought forth on 12/20/10 regarding both 01/13/10 and 12/02/10 incidents were dismissed. Plaintiff pled guilty to Driving While License Suspended occurring on or about (12/15/09). He was sentenced to time served.

117. On 01/14/11, parole agent Jason Forrester allegedly gave Plaintiff notice of parole violation charges which included these supplemental counts:

(8) Involvement in behavior violating traffic laws (12/23/10).

(9) Involvement in assaultive behavior (01/03/11).

(10) Engaged in behavior that was assaultive, abusive, threatening and/or intimidating (01/03/11).

118. On 01/21/11, agent Forrester allegedly gave Plaintiff notice of amendment concerning count 8 date of occurrence from 12/03/10 to 12/15/09.

119. On that same date agent Cole recommended the issuance of a detainer warrant reasoning the need to maintain jurisdiction pending new criminal charges. S/A Martin reviewed and authorized that recommendation. John Doe #4 prepared that report stating the preceding reasons. Area Manager Charles Sinclair concurred with that assessment and acquiesced that issuance.

120. Area Manager Sinclair noted that Plaintiff was unavailable for retaking or return to the custody of MDOC on 01/24/11.

121. On 01/24/11, Deputy Director Rubitschun issued a parole warrant for

matters concerning the 12/02/10 incident that was dismissed on 01/06/11.

122. On 01/25/11, Plaintiff pled guilty to Disturbing the Peace (on 01/03/11); he was given time served.

123. On 01/26/11, preliminary parole revocation or probable cause hearing was held; agent Cole presented facts from jail official report. Hearing examiner Nancy Wasso found probable cause on counts 8 - 10. S/A Martin would review that supplemental parole violation report.

124. S/A Martin noted Plaintiff became available for retaking or return to MDOC on 01/25/11.

125. On 01/26/11, agent Cole recommended Plaintiff return to prison and for revocation processing. Agent Cole reasoned that Plaintiff had been involved in threatening and intimidating behavior "several times" but witnesses had failed to testify due to fear of retaliation from Plaintiff; that several new felonies emerged for which he was arrested, that Plaintiff's violent history was to be considered, and that the safety of the public was at great risk as his assaultive behavior escalates and he seriously injures one in the community.

126. Agent Cole noted Plaintiff charges were all dismissed; S/A Martin recommended parole continuance and Transitional Residential Re-Entry Program (TRRP). Area Manager Sinclair recommended court deferrance , parole reinstatement and TRRP.

127. At an unknown date Plaintiff was returned back to Kalamazoo County for charges pending from 12/20/10. That case would be deferred pending resolution of divergence program (TRRP).

128. On 02/04/11, Plaintiff was involved in a final disturbance within the jail with deputies/jail officials. He was charged with Attempted Assault/Resist/Obstruct.

129. On 02/09/11, Plaintiff was served parole violation charges, for which he signed and initialled, which included:

    (1) Involvement in behavior that assaulted, resisted, and obstructed deputy sheriffs (02/04/11).

    (2) Engaged in behavior that assaulted, resisted, and obstructed Deputy Sheriffs (02/04/11).

Plaintiff waived any preliminary revocation or probable cause hearing.

130. Agent Cole recommended placement in TRRP, S/A Martin and A/M Sinclair both recommended Plaintiff return to prison.

131. On 02/11/11, Deputy Director Rubitschun issued a parole warrant for matters concerning the 02/4/11 incident.

132. On 02/14/11, (@ 11:37:21 and 11:37:28) reports regarding probable cause hearings held on (1/05/11 and 01/26/11 were copied accordingly and time stamped.

133. On 02/16/11, Plaintiff pled guilty to the resisting/obstruction charges.

134. On 02/23/11, Plaintiff was given notice of parole revocation hearing relative to 02/09/11 charges brought forth. That notice included formal request and appointment of an attorney in which that right was invoked.

135. On 03/08/11, parole revocation hearing was held, designee Rachel Johnson-Waterbury presiding. He was found guilty on counts 1 - 2 by criminal conviction. Attorney Law Examiner (ALE) Monica Laws-Wright alleged Plaintiff waived investigation.

136. ALE Laws-Wright presented facts from several undisclosed parole agent reports and uncontested preliminary findings. ALE Laws-Wright indicated Plaintiff adjustment was poor, tested positive for drugs, changed residences w/o authorization, and failed to make appointments. ALE Laws-Wright recommended parole revocation and prison continuance.

137. On 04/13/11, Parole Board members Anthony King and Barbara Sampson ordered a 12-month prison continuance as a result of the following considerations, although not limited to:

    (1) the offender has failed to control a substance problem which will likely lead to criminal behavior; and,

    (2) the offender cannot be managed in the community.

138. On 08/22/11, Parole Board members Jane Price and Stephen Deboer ordered a 12-month prison continuance as a result of the following considerations, although not limited to:

    (1) Absconding/failure to report; and

    (2) Personal history of substance is of long standing duration.

139. On 09/07/12, Parole Board deferred its decision pending a psychological evaluation to determine Plaintiff risk of sexually re-offending.

140. On or about 09/28/12, Plaintiff was seen by psychological service unit Qualified Mental Health Professional(s) that determined he appeared to minimize his actions or had showed little to no empathy or remorse regarding persons or the circumstances pertaining to a criminal sexual conduct case that was dismissed 1/30/04.

141. Parole Board members King and Sampson would use that particular information to warrant denial of re-parole but may not be limited to such evaluation report.

142. Early July 2013, an interested third-party representative of Plaintiff requested his master parole records and parole discharge certificate from Illinois Department of Corrections under Freedom of Information Act (FOIA). That request was denied 7/24/13.

143. On 08/22/13, Parole Board members King and Amy Bonito ordered a 12-month continuance as a result of the following considerations; although

(22)

not limited to:

   (1) Absconding/failure to report;

   (2) Continued substance abuse under parole supervision; and,

   (3) Personal history of substance abuse is of long standing duration.

144. On 09/05/13 and 09/10/13, Plaintiff contacted ICAOS Deputy Director Sam Razor to inquire about his parole discharge and information concerning the identity of the ICC Administrator for Michigan.

145. On 09/30/13, Plaintiff addressed those same matters via mail correspondence.

146. Additional requests for master parole records and parole discharge certificate were made on 12/11/13, 12/12/13 and 01/07/14 and was subsequently denied 12/19/13 and 01/24/14.

147. On   /  /  , Plaintiff sought appeal to Public Access Counselor from the office of the Illinois State Attorney General, but received no reply.

148. Plaintiff is presently confined within the custody of the MDOC and located at the St. Louis Correctional Facility in St. Louis, Michigan; is the current Warden and custodian.

149. Plaintiff's original and continued domicile remains in Cook County, Illinois.

## VI.  CLAIMS OF ACTION
### CLAIM I

Plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution was violated by members of the Interstate Commission on Adult Offenders Supervision and its bi-state affiliates subject to its agreement in maintaining and enforcing unconstitutional policies, customs, rules, and procedures when a) failing to provide a proper and timely

notice of parole violation chaege(s) pursuant to ICAOS rule 5.108(d)(1), b) failing to provide a timely and meaningful preliminary parole revocation hearing or probable cause proceeding pursuant to ICAOS rule 5.108(d)(3) and (4), c) failing to send notice of warrant vacation to the sending state pursuant to ICAOS rule 5.108(g)(2), d) failing to retake pursuant to ICAOS rule 5.105, and e) failing to provide notice of special parole conditions imposed by the sending state.

150. The ICAOS is a congressionally sanctioned compact agreement construct comprised of joint-agency members, particularly here, from both the states Illinois and Michigan.

151. The ICAOS is a corporate entity of these compacting states comparable to a local government or municipality. Ill-S.H.A. 730 ILLS 5/3-3-11; MCLA § 3.1012 Act III US ILCS 170/1.

152. Each bi-state commission director and Compact Administrator is duly responsible for the training and supervision of subordinates, member, official, or employee as it relates to matters of parole revocation proceedings and extradition transfer of parolees.

### Illinois Compact Authorities

#### A.   Commission's Undue Delay

153. Plaintiff became subject to the provisions of the ICAOS upon parole and departure from Michigan to Illinois on dates 08/14/05, 11/25/08 and 06/27/10. 45 ILCS 170/5; MCLA § 798.101(2).

154. ICAOS rule 5.108(d)(1) provides that the offender shall be entitled to the written notice of the alleged violation(s) at the probable cause hearing. Also, see Ill. Rev. Stat. ch. 38, para. 1003-3-9(c). (See Exhibit _____).

155. According to 20 ILL. Admin. Code IV § 1610.140(b)(3) preliminary hearings are to be heard within 10 days after parolee's arrest.

156. Plaintiff was arrested on 05/01/06. (See Exhibit _____).

157. Agent Jonh Doe #1 did not provide plaintiff with any notice of parole violation charges until 06/21/06 or 51 days after arrest.

158. That delay was unreasonable and prejudicial because Plaintiff underwent grievous loss in opportunity to factually contest the validity of an outstanding parole warrant executed on or about 03/03/06. That opportunity would have ensured a fair proceeding thereafter.

159. That warrant was subsequently cancelled on or about 07/13/06, which could have been taken place at a much earlier occasion if not for the previous delay.

160. Agent John Doe #1 and Compact Administrator (CA) Michelle Buscher did not conduct a probable cause hearing allegedly until 07/13/06 or 73 days after his arrest.

161. That delay was unreasonable and prejudicial because Plaintiff underwent grievous loss in opportunity to factually contest the charges raised to wit the criminal charges which prompted the arrest on 05/01/06. Those charges were dismissed on 06/01/06 and Plaintiff became available to parole authorities in both states. (See Exhibit _____).

162. Plaintiff should have been afforded a prompt, if not immediate, probable cause hearing but was unreasonably detained for at least an additional 42-days instead.

163. These parole violation charges raised were determined to lack any probable cause which could have possibly been determined at a much earlier occasion if not for that delay.

164. Plaintiff was entitled to a probable cause proceeding and notice of

parole violation charge(s) without undue delay as guaranteed by the XIV Amendment, **U.S.C.A. Amend XIV.**

### B. Commissioner's Denial of Defense Presentation and Right to Confrontation

165.   ICAOS **Rule 5.108(d)(3)** provides that the offender shall be entitled to the opportunity to be heard in person and to present witnesses and documentary evidence relevant to the alleged violation(s).   See **Ill. Rev. Stat. ch. 38 § 1003-3-9(e).** (See Exhibit _____)

166.   ICAOS **Rule 5.108(d)(4)** provides that the offender shall be entitled to the opportunity to confront and cross-examine adverse witnesses, unless the hearing officer determines that a risk of harm to a witness exists.   Also, see **U.S.C.A. Amend. VI.** (See Exhibit _____)

167.   Hearing officer Bill Clark, investigating officer unknown Julian, and supervising agent Unknown Faulkner, jointly and severally denied plaintiff any opportunity to produce favorable witnesses and/or documentary evidence or to confront and cross-examine adverse witnesses during his probable cause hearing conducted on 02/24/10.

168.   Plaintiff was not allowed to confront and cross-examine Agent Victor and/or arresting officer, for they were not available for questioning at the probable cause hearing held on 1/05/11, where he was accused of leaving the State of Illinois and violation of city ordinance [for which charges #5 and #6 were based and probable cause found]. (See Exhibit _____)

169.   Plaintiff was not allowed to produce CA Buscher, who would have provided testimony that the sending state Compact Administrator Don Matson requested continued supervision in Illinois despite the execution of the warrant issued by Michigan. (See _____)

170.   Plaintiff was not allowed to produce documentary evidence of ICAOS report done on 02/11/10 which would have purported his case be re-

opened and supervision be continued. (See Exhibit _____).

171. Plaintiff was not allowed to confront and cross-examine adverse witness agent Charles Victor, who could have been examined and questioned about his knowledge pertaining to the ICAOS report conducted on 02/11/10, and that Plaintiff not be violated but instead, supervised.

172. The preponderance of evidence against Plaintiff was acquired solely from the findings of agent Victor despite his physical absence and lack of testimony.

173. Plaintiff was entitled to an opportunity to be heard in a meaningful manner as guaranteed by the 14th Amendment. **U.S.C.A. Amd. XIV.**

### C.  Commissioner's Failure to Give Sending State Notice

174. ICAOS **rule 5.108(g)(2)** provides that if probable cause is not established for any violation of parole condition, the receiving state shall notify the sending state to vacate the warrant, and to continue supervision upon release if the offender is in custody on the sending state's warrant. (See Exhibit _____).

175. Plaintiff was denied procedural due process by the receiving state's (ILL.) failure to notify the sending state (Mich.) of there being no probable cause established for parole violation charges brought forth on 06/21/06 and 07/13/06. (See Exhibit _____).

176. CA Buscher failed to notify CA Martin of the need in vacating the warrants executed on 03/03/06 and 07/13/06.

177. After being released from Cook County Jail, in Illinois, Plaintiff returned to Michigan, having been permitted inadvertently, where he was then arrested on unrelated charges. While in custody, he was further detained on a secondary parole warrant that was issued on or about

03/03/06 and again on 07/13/06 which should have been vacated.

178. Plaintiff's grievous loss of conditional liberty (in being detained in Van Buren County Jail between 12/01/06 to 12/15/06 or approximately 14-days after arraignment on a Malicious Destruction of Property charge was the proximate cause which contributed to his confusion, distress, frustration and deteriorating attitude regarding his rehabilitative aims, that constrained him to act unconscionably and unbecomingly during an incident with another detainee on 12/04/06.

179. Plaintiff would have been given conditional release on or about 12/01/06 if not for the execution of that invalid warrant.

180. Plaintiff was entitled to the process of receiving state providing notice of dismissal or lack of probable cause on parole violation charge(s) to sending state for the purpose in vacating any outstanding parole warrant as guaranteed by the 14th Amendment. **U.S.C.A. Amd. XIV.**

## Michigan Compact Authorities

### D. Commission's Refusal to Retake

181. ICAOS **RULE 5.105** provides that a sending state shall retake an offender within 30 calendar days after the decision to retake has been made or upon release of the offender from incarceration in the receiving state.

182. Plaintiff became available to the Michigan Department of Corrections on 06/01/06, after dismissal of criminal charges brought forth in Illinois.

183. Agent John Doe #1 and CA Buscher however continued to hold Plaintiff in custody and later conducted an extradition hearing on or about 07/13/06 or 42-days afterwards.

184. Michigan Parole Board had an outstanding warrant, although it declined to retake, execute the warrant, or even respond to Illinois' numerous

request for action. The Manager of the Parole Service Section was responsible for that retaking.

185. Plaintiff was eventually released from jail and proffered early termination from parole status by CA Buscher, on or about 07/13/06.

186. Upon Plaintiff's arrest and continued detention in Michigan, pro tem Compact Administrator Pat Cole and Supervising Agent Martin failed to afford him any procedural due process for either notice of parole violation in a timely manner, **failing to give a probable cause hearing, initiating and executing an invalid warrant** without probable cause, and **supplementing newer parole violation charge(s)** which occurred on 12/04/06. Criminal charges underlying Plaintiff's arrest in Michigan were not included in that supplementation.

187. Plaintiff never requested any continuance or delay nor did he waive probable cause proceedings.

188. Both Michigan Parole Board and Department of Corrections through CA Cole and Agent Martin had the obligation and ample opportunity to afford him procedural due process.

189. Both Michigan Parole Board and Department of Corrections had ample opportunity to locate and recover Plaintiff while he resided in Illinois, but decisively, even arbitrarily, elected not to seek or retake him, and would wait until 12/04/06 or approximately 187-days after he became available, again, to exercise jurisdiction.

190. Plaintiff was grievously injured by this unreasonable restraint or seizure having been given an expectation of liberty by an early release from conditional liberty/parole or else its proposal under the false impression or misinformation created by CA Buscher and from not having been mentioned or supervised since being released from jail in Illinois

29

on 07/13/06. Plaintiff was also under the impression that no outstanding parole warrant existed as he was released from jail.

191. Plaintiff was grievously injured by CA Buscher and CA Cole for their inadequate training and gross negligence in supervising to allow the above improprieties and for the individual account of misinformation regarding Plaintiff's parole discharge.

192. Plaintiff was entitled to the sending state's retaking after he was made available as guaranteed by the 14th Amendment. **U.S.C.A. Amd. XIV.**

### E.  Lack of Notice by Illinois Parole Authorities

193. Michigan Compact Administrator Don Matson requested that Illinois parole agent Amanda Snyder and Compact Administrator Buscher inform Plaintiff of the imposition of additional Special Conditions for parole and that such notice be returned signed by him, on 12/07/10. (See Exhibit _____).

194. CA Matson requested that Illinois Parole Agent Charles Victor and CA Buscher inform Plaintiff that he was required to attend substance abuse treatment/programming as a Special Condition of his parole, on 12/01/09. (See Exhibit _____).

195. CA Matson requested that Agent Victor and CA Buscher inform Plaintiff that his parole was being extended on 11/12/09. (See Exhibit _____).

196. Plaintiff was never notified of either extraneous conditions despite having numerous encounters with agents Saylor and Victor, and even CA Buscher, after these special conditions were imposed and imparted to them.

197. Failure to notify Plaintiff resulted in 1) his being unaware of his need to prohibit contact or communication with an alleged complainant,

Melinda Ellis, 2) his being unaware of his mandatory obligation to attend programming to maintain his parole or liberty interest, 3) his being uncertain whether his parole was completed, and 4) his being unaware that his parole was extended due to financial obligations.

198. Plaintiff continued to verbally communicate with the alleged complainant, Melinda Ellis, for the purposes of contact with his paternal children which unknowingly violated that special parole condition.

199. Agent Victor and CA Buscher reported Plaintiff's failure to enroll in programming which he was unaware was a mandatory condition of his parole. However, Plaintiff voluntarily attempted to enroll in discretionary programming unbeknownst of that special parole condition.

200. Agent Victor and CA Buscher reported reported Plaintiff's failure to enroll in programming which he was unaware was a mandatory condition of his parole. However, Plaintiff voluntarily attempted to remain in discretionary "day reporting" programming until told to do otherwise by a prior parole agent Christopher Winfrey.

201. Plaintiff's heedless appearance in maintaining his parole conditions or lack of precaution is a direct consequence of the lack of notice and uncertainty in whether his parole was completed. Plaintiff's parole extensions are numerous and confusing. [02/14/07, 11/25/09, 01/21/10, 07/21/10, 01/21/11 and 11/02/11 respectively].

202. ICAOS **rule 3.107(A)(10)** provides, in part, that a transfer request for an offender shall contain information relating to any financial obligations, while ICAOS **rule 4.108(b)** provides that upon notice by the sending state that the offender is not compliant with financial obligations, the receiving state shall notify the offender that the

offender is in violation of the conditions of supervision and must comply.

203. Plaintiff was entitled to notice of these special conditions and orders under 14th Amendment. U.S.C.A. Amd. XIV.

204. ICAOS Director Unknown Hagerman and Deputy Director Sam Razor were acting persons who had a duty to supervise and control the internal affairs and inner-workings of their respective commission body, and through their negligent acts and/or lack of supervisory control and inadequate training mechanisms, allowed for the continued practices of the aforesaid unconstitutional policies, customs, rules and procedures and acquiesced their maintenance and enforcement which would ultimately deny Plaintiff of his civil rights. 42 U.S.C. § 1983.


## CLAIM II

Illinois parole authorities under the color of state law violated 42 U.S.C. § 1983 by depriving Plaintiff of his Fourteenth Amendment right when a) failing to provide timely notice of parole violation charge(s) and failing to provide any meaningful parole revocation hearing or probable cause proceeding and b) by depriving Plaintiff of his Fourteenth Amendment right when manufacturing false parole violation charge(s) and report to cause an unreasonable seizure.


### A. Undue Delay and Inadequate Due Process

205. Illinois Revised Statute (Ill. Rev. Stat), ch. 38, para. 1003-3-9(c) provides that the offender shall be entitled to the written notice of the alleged violation(s) at the probable cause hearing. Also, see 730 ILLS 5/3-3-9. (See Exhibit _____).

32

206. **Illinois Administrative code (Ill. Admin. Code) IV, § 1610.140(b)(3)** provides that preliminary hearings are to be heard within 10 days after parolee's arrest. (See Exhibit _____ ).

207. Plaintiff was last seen face-to-face with parole officials during a scheduled parole supervision appointment on 12/01/09. (See Exhibit _____ ).

208. Parole Agent Victor filed three (3) offender violation reports on 10/07/09, 11/23/09 and 01/29/10, respectively.

209. In those reports it was alleged that Plaintiff tested positive for Controlled Substances, refused drug treatment programming, and missed several scheduled appointments. Those reports were reviewed and approved by CA Buscher.

210. Agent Victor and CA Buscher, both had an opportunity to detain Plaintiff on 12/01/09 once in custody and had an opportunity to provide him with notice of parole violation charge(s) and a probable cause hearing on the violations reported on 10/07/09 and 11/23/09.

211. On or about 03/19/10, Plaintiff was held on a parole detainer in consequence of those uncontested parole violation charges.

212. Plaintiff was entitled to prompt notice and hearing, and an opportunity to be heard in a meaningful manner including a right to present favorable witnesses or evidence and to confront and cross-examine any adverse witnesses.

### B.   False Reports, Abuse of Process
### and Unreasonable Seizure

213. Agent Victor reported that on 07/18/09 and 09/30/09 Plaintiff tested positive for drug use.

214. During that period in Plaintiff's parole, agent Christopher Winfrey was

his field agent; Agent Victor did not become his actual agent until 10/04/09.

215. Agent Winfrey completed a progress report on 09/01/09 in which there was no mention of any positive drug testing on any of the dates before that agent's leave. (See Exhibit _____).

216. Agent Victor reported that on 10/07/09 Plaintiff refused drug treatment programming and that he "discharged unsuccessfully from Day Reporting Program." (See Exhibit _____).

217. Agent Winfrey mandated that Plaintiff attend Day Reporting Program on or about 06/25/09 and then rescinded that obligation upon his leave. See Exhibit _____).

218. Agent Victor reported that on 11/15/09 and 11/16/09 Plaintiff failed to remain at his residence for an agent visitation, and further claimed that he made a call to Plaintiff's phone, left a voice message, and that the Plaintiff acknowledged his position but when he arrived Plaintiff was not home.

219. Agent Victor had contact with Plaintiff via telephone and in person before and after the alleged incident on 11/15/09 and 11/16/09 (as the logs will support). Plaintiff was not ordered to stay at home nor was his agent ever present at Plaintiff's residence.

220. At no time did Agent Victor or CA Buscher mention any absconding or other violation of parole during any visit or phone reporting call.

221. Agent Victor noted that Plaintiff was "non-effective/unmanageable" on or about 11/23/09, and again, on 01/29/10 and sought to transfer supervision and management upon sending state parole authorities, although continued supervision was suggested by sending state instead. (See Exhibit _____).

34

222. Agent Victor then manufactured false evidence to arbitrarily and maliciously accuse Plaintiff of violating conditions of his parole for the purpose of case closure, encouraging issuance and execution of a parole warrant, and retaking by the sending state.

223. Agent Victor and CA Buscher abuse of process resulted in the sending state imposing additional and special parole conditions, continued supervision beyond the expiration of his initial parole termination date, and erroneous and highly prejudicial information that was and is being presently considered during reparole or administrative proceedings.

224. As a result of these false reports, the sending state issued a parole warrant that was executed on or about 02/15/10 Plaintiff was held on a parole detainer until his retaking by Michigan.

225. Plaintiff suffered needless and unwarranted imprisonment where probable cause was a resultant of false information.


## CLAIM III

Illinois parole authorities under the color of state law violated 42 U.S.C. §§ 1983, 1985(3) and 1986 by conspiring to deprive Plaintiff of his Constitutional Fourth, Sixth and Fourteenth Amendment Rights.

226. On 10/07/09, 11/23/09, and 01/29/10 Parole Agent Victor filed three (3) offender violation reports alleging Plaintiff tested positive for controlled substances, refused drug treatment programming and missed scheduled appointments; Compact Administrator Buscher agreed with these findings and approved them to be forwarded to Michigan parole authorities.

227. Agent Victor and CA Buscher physically conferred with Plaintiff on

on 12/01/09. Plaintiff was never notified of having committed any parole violation during that conference.

228. Plaintiff was never afforded any opportunity to produce favorable witness. Parole Agent Christopher Winfrey, who would have provided information proving Plaintiff had not tested positive for drug use during his supervision period and that he never refused treatment but was instead instructed not to attend.

229. Plaintiff was never afforded any opportunity to produce favorable documentary evidence of telephone call logs between both Plaintiff and agents or visitation logs proving that Plaintiff made his required reporting and scheduled appointments.

230. Plaintiff was entitled to a prompt probable cause hearing, an opportunity to be heard in a meaningful manner and a right to present favorable witnesses/evidence. U.S.C.A. Amd. VI, XIV.

231. Agent Victor and CA Buscher conspired with one another to deny Plaintiff any opportunity to produce favorable witness and evidence, and the chance to properly challenge the false violation reports.

232. That civil conspiracy led to sending state's retaking and detention of Plaintiff ---- a process contrived by impeding or interfering with his procedural due process rights.

233. Plaintiff was also denied equal protection under the law where similarly situated persons would have been treated differently. Plaintiff's conditionally disabled status as an incarcerated person under the Americans with Disabilities Act was exploited by the officials above.


## CLAIM IV

**Plaintiff's right to freedom from retaliation against an expressed**

right and from harassment in the form of tortuous interference in light of the First, Fifth, and Fourteenth Amendments was violated by Illinois Interstate Commission officials within the meaning of 42 U.S.C. § 1983.

### [Offense #1]

234. On or about 07/13/06, after Plaintiff's probable cause and extradition proceedings was concluded, Compact Administrator Buscher deliberately and invidiously misinformed him that he was being discharged from his parole.

235. Plaintiff's initial termination date was set to expire on 02/14/07.

236. Plaintiff was never given any documentary notice of this verbal discharge by the Michigan Parole Board although, he was misled to believe that what was told to him by CA Buscher was truthful.

237. Plaintiff subsequently left the state of Illinois without intent of violating any condition of his parole. Had he been told otherwise or if not for CA Buscher's interference in the performance of his parole agreement he would not have left that state unless permitted.

### * Retaliation *

238 After Plaintiff's release (07/13/06) CA Buscher and John Doe #1 failed to intervene in the reissuance of a parole warrant that was premised upon the same charges which were previously determined to have lacked any probable cause.

### [Offense #2]

239. On or about 02/11/10, Compact Administrator Buscher contacted ~~with~~ to speak Plaintiff via telephone, and again, deliberately and invidiously disinformed him

of being discharged.

240. Had Plaintiff not been told he was discharged from parole or else if not for CA Buscher's interference in the performance of his parole agreement, he would not have left the state of Illinois unless permitted.

241. On or about 02/19/10, Plaintiff, would again be accused of leaving the state of Illinois without permission.

### [Offense #3]

242. On or about 07/18/13, 12/11/13, 12/12/13, 01/17/14 and 01/22/14 Plaintiff and his authorized representative requested from the Illinois Department of Corrections and Interstate Compact Unit (pursuant to the **Freedom of Information Act; 5 ILCS 140/1 and 20 Ill. Admin. Code 1610.30 § 3(b)(1)** Parole Files) pertinent and specific information regarding parole discharge information. These requests were all denied and an inquiry into the matter addressed to ICAOS Deputy Director Razor was never responded to. (See Exhibit _____).

243. That improper denial and disregard prevents Plaintiff from discovering any improprieties or information supporting or disproving CA Buscher's actions in inducing Plaintiff to unwillingly violate a condition of his parole.

### CLAIM V

**Plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution within the meaning of 42 U.S.C. § 1983 were violated by the Michigan Parole Board; Michigan Department of Corrections (superior respondeat): Bureau of Field Operations and Bureau of Parole and Pardons**

38

(Office of Parole and Probation Services) and its members under the color of state law for maintaining and enforcing policies, procedures and directives by a) fraudulently representing and forging official documents concerning him, b) failing to provide timely notice of parole violation charge(s) pursuant to federal law and standards, and c) failing to provide a timely and meaningful preliminary parole revocation hearing or probable cause proceeding pursuant to federal law and standards.

### A.  Manufacturing of Official Notice

244. According to Michigan Department of Corrections (MDOC) Operating Procedures, (OP) 06.06.115 Field Operations Administrator (FOA) § P. 17 provides that service [of notice] of parole violation charges includes that [a parolee is instructed to] (1) sign and date copies acknowledging receipt, and (2) make elections by marking and initialing the appropriate boxes, as it pertains to due process provisions. (See Exhibit _____).

245. If a parolee refuses to sign or refuses to accept a copy of the notice, a witness must indicate refusal and leave a copy with the detention officer to distribute to the parolee at a later time.

244. ~~According to Michigan Department of Corrections (MDOC) Operating Procedures (OP) 06.06.115 Field Operations Administrator (FOA) § P, 17 provides that service [of notice] of parole violation charges includes that [a parolee is instructed to] (1) sign and date copies acknowledging receipt, and (2) make elections by marking and initialing the appropriate boxes, as it pertains to due process provisions. (See~~ Exhibit _____).

245. ~~If a parolee refuses to sign or refuses to accept a copy of the notice,~~

39

~~a witness must indicate refusal and leave a copy with the detention officer to distribute to the parolee at a later time~~.

246. On 01/27/09, Parole Agent Kelly Hanson fraudulently represented Plaintiff as having been given notice of parole violation charges by signature and initials.  That notice was acknowledged and approved by Supervising Agent Ira Green, III. (See Exhibit _____).

247. On 06/24/09, Parole Agent Susan Rondeau fraudulently represented Plaintiff as having been given notice of parole violation charges by signature and initials. (See Exhibit _____).

248. On 04/06/10, Parole Agent Jason Golightly fraudulently represented Plaintiff as having been given notice of parole violation charges by signature and initials. (See Exhibit _____).

249. On 12/28/10, Parole Agent Angela Biggart fraudulently represented Plaintiff as having been given notice of parole violation charges by signature and initials. (See Exhibit _____).

250. Both, on 01/14/11 and 01/21/11, Parole Agent Jason Forrester fraudulently represented Plaintiff as having been given notice of parole violation charges by signature and initials.  The latter notice contained no indicating marks, signatures, or initials. (See Exhibit _____).

251. None of these notices indicated whether Plaintiff refused to sign or initialize.

252. Plaintiff maintains never being given notice on several of these particular dates aforesaid.  Several notices were not signed, initialed, or endorsed by Plaintiff and those notices contained false representation for his signatures that were misleading and intended to defraud.

253. Agents Hanson, Rondeau, Golightly, Biggart, Forrester, and Supervising Agent Green,III, illegally and wantonly inserted typed characters in

place of Plaintiff's signature and initials for the purpose of deceiving or giving the appearance that notice had been served and due process met.

### B. M.D.O.C. and Parole Board Undue Delay

254. **Michigan Compiled Law Annotated (MCLA) § 791.249A(2)** provides that prior to the preliminary hearing, the accused parolee shall be given written notice of the charges, time, place, and purpose of the preliminary hearing.

255. OP 06.06.115 FOA § C provides that due process requirements demand that investigation, reporting and processing of alleged violations be completed within specific time limits: "In custody Parole Violator (PV) only, "are to be served charges within 5 calendar days PV only custody began. **See attachment** A, p. 1 **and** PD 06.06.100(W).

#### [Offense #1]

256. Plaintiff was arrested, extradited, and detained at Charles Egeler Reception & Guidance Center, in Jackson, Michigan on or about 03/19/10, at which time he became "in custody PV only " Parole Agent Golightly and Supervisory Agent Frank Messer did not provide Plaintiff with notice of parole violation charges allegedly until 04/06/10 or 18 days after retaking.

257. That delay was unreasonable and prejudicial because Plaintiff underwent grievous loss in opportunity to challenge the sufficiency of the charges by promptly obtaining the registry logs of his out-of-state visitations and appointments made on these scheduled reporting days  These time logs are periodically changed out on a month to month basis and are eventually discarded.

258.    Plaintiff was never afforded a probable cause determination hearing on that
        specific charge. (See Exhibit _____).

### [Offense #2]

259.    Plaintiff was arrested on 12/20/10.  Parole Agent Braggart did not provide
        Plaintiff with notice of parole violation charges allegedly until 12/28/10, or
        8 days after arrest.

260.    That delay was unreasonable and prejudicial because Plaintiff underwent
        grievous loss of opportunity to readjust to re-confinement and loss in
        liberty that became the proximate cause contributing to his confusion,
        distress, frustration, and deteriorating attitude regarding his rehabilitative
        aims and constrained to act unconscionably and unbecomingly during an incident
        with another detainee on 01/03/11.

### [Offense #3]

261.    Plaintiff was in custody at Berrien County Jail after the 01/03/11 incident
        until late January 2011.  Parole Agent Forrester did not provide Plaintiff
        with notice of parole violation charges allegedly until 01/14/11, or 11 days
        after that incident.

262.    That delay was unreasonable and prejudicial because Plaintiff underwent
        grievous loss in opportunity to prepare his defense; by being unaware of the
        charges he could not have known that he was being violated for
        non-jurisdictional matters which are not defined as offenses that violated
        parole conditions.  Plaintiff could not be charged with violating parole for
        committing any public ordinance violation or traffic law offense. See MCLA §§
        257.303; 257.904(1); 750.167; 801.25.

263.    A prompt hearing or proper notice would have afforded Plaintiff ample time to
        discover and challenge the premise that an ordinance is not a misdemeanor or
        felony offense which can be used to establish a violation

of a condition of parole under the auspices of state law  MCLA §
791.240A.

264. A prompt hearing or proper notice would have afforded Plaintiff an
opportunity to reasonably prevent or else challenge Agent James Cole,
Supervisory Agent Donald Martin, and Area Manager Charles Sinclair
before 01/21/10 from recommending the issuance of a parole detainer
warrant based upon a violation of a traffic law and safety ordinance.

265. Plaintiff was entitled to notice of parole violation charge(s) without
undue delay as guaranteed by the 14th Amendment. U.S.C.A. Amd. XIV.

### C. M.D.O.C. and Parole Board's Denial of Defense
### Presentation and Right to Confrontation

266. MCLA § 791.239 A(3) provides, in part, that at the preliminary hearing,
the accused parolee is entitled to the following rights: (B) the right
to testify and present relevant witness and documentary evidence, and
(C) the right to confront and cross-examine adverse witnesses unless the
person conducting the preliminary hearing finds on the record that a
witness may be subjected to risk of harm if his or her identity is
revealed  See also PD 06.06.100(P)(3-4).

267. Plaintiff was arrested in Michigan, on 11/28/06  He became "In Custody
PV Only" on 12/15/06 after a guilty pleading on a Malicious Destruction
of Property charge which was inconsequential to his parole violation
issue  Compact Administrator Cole and Supervisory Agent Martin
completely denied him any probable cause hearing although a formal
revocation hearing was held on 01/29/07 or 62-days after unrelated
arrest.

268. That delay and denial was unreasonable and prejudicial because Plaintiff
underwent grievous loss in opportunity to challenge the factual basis of

the reissued warrant that had been previously determined to lack any probable cause; hence was further determined to lack probable cause during that formal hearing as well.  Plaintiff's detention was initially based on an invalid warrant which should have been vacated on or about 07/13/06 to make his confinement illegal.

### [Offense #2]

269.  Plaintiff was arrested, extradited (from Illinois) and detained in a M.D.O.C. institution on or about 03/19/10.  Agent Golightly and Supervisory Agent Messer completely denied him of any probable cause hearing, declaring that Plaintiff "was not eligible for a probable cause hearing." (See Exhibit _____).

270.  Compact Officer Daryn Cobb and Compact Administrator Matson approved of that denial, then provided subsequent recommendations concurring for additional Special Alternative Incarceration programming. (See Exhibit _____).

271.  Plaintiff was held in Intense Detention Residential Program (IDRP) until his eventual release on 06/16/10, or 72 days without any findings of probable cause on parole violation charges nor any formal hearing on these charges.

### [Offense #3]

272.  MCLA § 791.239(A)(1) provides that within 10 days after an arrest of an alleged violation of parole, the parolee shall be entitled to a preliminary hearing to determine whether there is probable cause to believe that the conditions of parole have been violated.  See also, OP 06.06.115A FOA.

273.  Plaintiff was arrested on 12/20/10, confined in Kalamazoo County Jail.  Agent James Cole, Investigating Agent Charels Motten, and Hearing

Examiner Marvin Bruin did not provide a probable cause hearing allegedly until 01/05/11, or 16 days after his arrest.

274. During that proceeding, Agent Cole, Agent Motten, and Examiner Bruin deliberately refused or consented to that refusal of Plaintiff being afforded an opportunity to present any favorable witness or evidence in furtherance of his defense and position or an opportunity to confront and cross-examine any adverse witness.

275. Plaintiff was charged with one (1) count of leaving the State of Illinois without permission on 12/02/10. [#5]. The charges brought forth with that charge were determined to lack probable cause; and on 01/06/11, those same charges were dismissed in criminal court.

276. Plaintiff duly requested to confront and cross-examine his parole agent, Charles Victor. Agent Cole declared that Agent Victor was not available for questioning. Instead, Agent Victor submitted a violation report. No material proof was further provided to support that assertion, nor was it veritable. No such violation report was ever prepared by Agent Victor or receiving state. (See Exhibit _____).

277. That examination would have proven that the accusations against him were false and that he was not within the State of Michigan during 12/02/10.

278. Plaintiff was also charged with a count of "behavior which violated an ordinance on 12/20/10." [#6]  That charge would be deferred pending the outcome of additional programming proffered by parole authority. Probable cause was not yet found on this count #6.

279. Plaintiff duly requested the production of material evidence to show that the particular charge of "Interference With A Safety Officer" is an ordinance violation, and not an offense which a parole violation could

be established  See MCLA §§ 257.324(h);  756.217;  772.1;  791.240A. Plaintiff was not given any special conditions against the commission of an ordinance violation.

280. That evidentiary production would have shown Plaintiff's detention would be based upon an invalid premise or unrecognized offense and that he was being held illegally.

### [Offense #4]

281. Plaintiff remained in custody until retaking from  /  / to 02/16/11

282. During that detention, Plaintiff was involved in an ordinance violation and charged with Disturbing the Peace on 01/03/11  Plaintiff pled guilty to that charge on 01/25/11.

283. Agent Cole and Hearing Examiner Nancy Wasso did not conduct any probable cause hearing on the circumstances of that pleading until 01/26/11 or 23-days after the incident  During that proceeding, Agent Cole and Examiner Wasso deliberately refused or consented to that refusal in Plaintiff being afforded an opportunity to present any favorable witness or evidence to further support his defense or position.

284. Plaintiff was charged with a count of being involved in behavior violating traffic laws on 12/15/09, [#8]. These charges were however previously dismissed in 2010  Probable cause was found on this count #8.

285. Plaintiff requested the production of several Illinois and Michigan parole agents who had knowledge of the matter and who could provide disclosure about the dismissal of that remote traffic violation.

286. Plaintiff also requested the production of material evidence to show that that particular charge is a violation of a traffic law and not an offense for which a parole violation could be established, See MCLA §§ 257.303;  257.904(I));  791.240A. Plaintiff was not given any special

conditions against the commission of a traffic law violation.

287. That evidentiary production would have shown that, that charge was used arbitrarily and capriciously to justify illegal restraint, and that Agent Cole, Agent Martin and Area Manager Charles Sinclair abused the revocation process by charging Plaintiff with a violation that supposedly occurred 407-days beforehand.

288. Plaintiff was also charged with two connected counts of being "involved in assaultive behavior" and "engaging in behavior that was assaultive, abusive, threatening and/or intimidating" on 01/03/11, [#9 - #10]. Probable cause was found on these counts #9 and #10.

289. Plaintiff duly requested the production of material evidence to show that those particular charges resulting from "Disturbing the Peace" is equivalent to a violation of an ordinance and not an offense for which a parole violation could be established. See MCLA §§ 772.1; 750.167; 791.240A; 801.25.

290. That evidentiary production would have shown that Plaintiff's continuous detention was accomplished by a malicious abuse of process.

291. Plaintiff was entitled to a timely and meaningful opportunity to be heard as guaranteed by the 14th Amendment U.S.C.A. Amd. XIV.

292. M.D.O.C. Director Daniel Heyns, Field Operations Administrator John Rubitschun, and Parole Board Chairman Thomas Combs were acting persons who supervised and controlled the internal affairs and inner-workings of these respective departments, bureaus, agencies, and/or services.

293. These appointed officials, through their negligent acts and/or lack of supervising control and inadequate training mechanisms, allowed for the continued practices of the aforesaid unconstitutional policies, customs, statutes, procedures and directives and acquiesced their maintenance and

enforcement which would ultimately deny Plaintiff of his civil rights 42 USC § 1983.

## CLAIM VI

Plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution within the meaning of 42 USC § 1983 was violated by the Michigan Parole Board and its members under the color of state law for maintaining and enforcing unconstitutional statutes, customs, policies, rules, procedures and directives when a) failing to provide timely and meaningful parole revocation hearing(s) or formal proceeding(s) pursuant to federal law and standards, b) maliciously abusing the revocation process by using inaccurate information or moot subject-matter gathered from preliminary parole revocation proceedings, and c) failing to provide adequate notice of parole extension or special action and allowed to be heard in a meaningful manner.

### A.   Michigan Parole Board's Hearing Denial

294. MCLA § 791.236(2) provides that a revocation interview shall be conducted within 45 days after receiving information received by the board after the original parole release decision or new information  At least 10 days before the interview, the parolee shall receive a copy or summary of the new evidence that is the basis for the interview.

295. MCLA § 791.240A(3) provides that within 45 days after a parole prisoner has been returned or is available for return to a state correctional facility under accusation of a parole violation other than conviction for a felony or misdemeanor punishable by imprisonment under the laws of this state, the United States, or any other state or territory of the

United States, the prisoner is entitled to a fact-finding hearing on the charges before one (1) member of the parole board. See also, OP 06.06.115 § C FOA: OP-FOA-06.06.115 A; PD 06.06.100(W).

296. MCLA § 791.240A (6-7) provides, in part, that a fact-finding hearing may be postponed for cause beyond the 45-day time limit on the written request of the parolee  *   *   * [T]he director or a deputy director designated by the director shall be notified in writing if the fact-finding hearing is not conducted within the 45-day time limit, and the hearing shall be conducted as soon as possible.

297. On or about 01/27/09, 04/06/10, 01/05/11 and 01/26/11 respectively, Plaintiff was allegedly afforded preliminary parole violation hearings or probable cause hearings that resulted in the finding of probable cause on several alleged violations of his parole conditions  None of these charges that were established were ever recharged or included in his formal parole revocation hearing held on 03/08/11

298. Plaintiff was repeatedly restrained of his liberty as a result of these particular charges.

299. Parole Board Chairman Thomas Combs, Parole Board member and designee Hearing Officer Rachel Johnson-Waterbury never afforded Plaintiff any due process or opportunity to be heard in a meaningful manner to challenge, contest, or mitigate the effect of those charges accused  Those preliminary findings were deliberately raised to warrant his prior confinement.

300 Plaintiff never waived any formal parole revocation hearing on those preceding charges in which probable cause was found.

301 Chairman Combs was aware or should have been made aware of the designee officer's failure to conduct any fact-finding hearing for the following

49